UNITED STATES OF AMERICA
IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD JACKSON and TERRY            Case No.
TOLBERT-JACKSON;           Hon.
       Plaintiffs;

-vs-

TOYOTA MOTOR NORTH
AMERICA, INC; TOYOTA MOTOR
ENGINEERING & MANUFACTURING
NORTH AMERICA, INC.; and TOYOTA
MOTOR SALES, U.S.A., INC.
       Defendants.
_____/
Richard G. Finch (P48592)
Tarek M. Baydoun (P74551)
MERIDIAN LAW GROUP
Attorneys for Plaintiffs
19855 W. Outer Dr., Suite 104-W
Dearborn MI 48124
(313) 288-8529
rfinch@meridianlawcounselors.com
_____/

**PLAINTIFFS' COMPLAINT AND DEMAND FOR TRIAL BY JURY**

NOW COME PLAINTIFFS, by and through their attorneys Meridian Law Group, and for their Complaint against the above-named Defendants state as follows:

**PARTIES, JURISDICTION AND VENUE**

1)      At all relevant times, Plaintiffs were residents of the City of Detroit, County of Wayne, State of Michigan, which is within the Eastern District of Michigan.

2)      At all relevant times, Defendant Toyota Motor North America, Inc., was a California corporation with its principal place of business at 19001 South Western Avenue, in the City of Torrance, County of Los Angeles, State of California.  It regularly conducts business throughout the State of Michigan, including the Eastern District of Michigan, and has a

registered agent for service of process headquartered in the City of Ann Arbor, which is located within the Eastern District of Michigan.

3) At all relevant times, Defendant Toyota Motor Engineering & Manufacturing North America, Inc., was a Kentucky corporation with its principle place of business located at 25 Atlantic Avenue, in the City of Erlandger, Commonwealth of Kentucky. It regularly conducts business throughout the State of Michigan, including the Eastern District of Michigan, and has a registered agent for service of process headquartered in the City of Ann Arbor, which is located within the Eastern District of Michigan.

4) At all relevant times, Defendant Toyota Motor Sales, USA, Inc., was a California corporation with its principal place of business at 19001 South Western Avenue, in the City of Torrance, County of Los Angeles, State of California. It regularly conducts business throughout the State of Michigan, including the Eastern District of Michigan, and has a registered agent for service of process headquartered in the City of Ann Arbor, which is located within the Eastern District of Michigan.

5) The transaction or occurrence giving rise to this suit occurred in the City of Detroit, County of Wayne, State of Michigan, which is located within the Eastern District of Michigan.

6) The amount in controversy as to each plaintiff exceeds Seventy-Five Thousand Dollars ($75,000.00) and is otherwise within the jurisdiction and venue of this Court.

## COMMON ALLEGATIONS

7) Plaintiffs hereby incorporate by reference the preceding paragraphs.

8) On or about March 19, 2016, Plaintiffs were the owners and occupants of a 1999 Lexus LS 400, VIN # JT8BH28F2XO150934.

9) At all relevant times, the above-named Defendants designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold Toyota vehicles, including the above-referenced 1999 Lexus LS 400.

10) At all relevant times, Defendants were acting as the agents and employees of each of the other Defendants, and were acting within the scope, purpose, and authority of that agency and employment and with full knowledge, permission, and consent of each of the other Defendants.

11) On or about March 19, 2016, Plaintiff Richard Jackson was operating the above-referenced 1999 Lexus LS 400. His wife, Plaintiff Terry Tolbert-Jackson, was in the front passenger seat.

12) On the aforementioned date, Plaintiff Richard Jackson drove the 1999 Lexus LS 400 into the parking garage of the Greektown Casino located in the City of Detroit, County of Wayne, State of Michigan. He was operating the vehicle in a safe and prudent manner, as intended by the Defendants.

13) As Plaintiffs entered the parking garage, their 1999 Lexus LS 400 suddenly and uncontrollably accelerated, struck a vehicle coming from the opposite direction, and then came to rest after striking a concrete pole, totaling the Lexus.

14) As a direct and proximate result of this collision, Plaintiffs both sustained severe bodily injuries, which are possibly permanent in nature.

15) In addition to severe pain and suffering, as well as the mental, physical, and emotional distress directly and proximately caused by this collision, Plaintiffs incurred and will

continue to incur medical, hospital, and other related expenses for their care, recovery, and rehabilitation.

16) At the time of the collision, Plaintiffs' 1999 Lexus LS 400 was equipped with a defective electronic throttle control system, which proximately caused the sudden and uncontrollable acceleration described in the preceding paragraphs.

17) Further, at the time of the collision, Plaintiffs' 1999 Lexus LS 400 was not equipped with a brake override system, also known as smart-throttle technology.

18) Due to the defective electronic control system, the lack of a brake override system, and the lack of other reasonable safety measures that will be revealed through discovery, Plaintiffs' 1999 Lexus LS 400 was not reasonably safe at the time it left the control of the Defendants.

19) According to generally accepted production practices at the time the Plaintiffs' 1999 Lexus LS 400 left the control of Defendants, the break override system was an available, practical, and technically feasible alternative production practice that would have prevented the above-referenced sudden and uncontrollable acceleration without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others.

20) Prior to the collision, Defendants had actual knowledge that Plaintiffs' 1999 Lexus LS 400 was unsafe, as Defendants were aware that vehicles such as Plaintiffs' were subject to sudden and uncontrollable acceleration of the type described in the preceding paragraphs. Nevertheless, Defendants failed, neglected, and/or refused to recall Plaintiffs' vehicle and repair the problem, such as by installing a break override system, or by taking other

available, practical, and technically feasible measures to eliminate or reduce the risk of such sudden and uncontrollable acceleration.

## COUNT I – NEGLIGENCE

21) Plaintiffs hereby incorporate by reference the preceding paragraphs.

22) At all times herein mentioned, Defendants Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. ("Defendants"), designed, tested, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied, and sold to distributors and retailers for sale, the subject vehicle and/or its component parts.

23) Defendants owed Plaintiffs a duty to exercise reasonable care in the design, testing, manufacture, assembly, sale, distribution and servicing of the subject vehicle, including a duty to ensure that the subject vehicle did not cause Plaintiffs, other users, bystanders, or the public, unnecessary injuries or deaths.

24) Defendants knew or should have known that the subject vehicle was defectively designed and inherently dangerous and has a propensity to suddenly accelerate, lose control, and cause injuries.

25) Defendants knew or should have known that the subject vehicle was defectively designed and/or manufactured and was therefore prone to failure under normal driving conditions, potentially causing injuries and/or deaths.

26) Defendants failed to exercise ordinary care and breached their duty by, among other things:

      a. Failure to use due care in the manufacture, distribution, design, sale, testing, and servicing of the subject vehicle and its component parts in order to avoid the aforementioned risks to individuals;

      b. Failure to provide adequate warning of the sudden unintended acceleration problem and its propensity to cause and/or contribute to an accident;

      c. Failure to incorporate within the vehicle and its design reasonable safeguards and protections against sudden acceleration and the consequences thereof;

      d. Failure to make timely correction to the design of the subject vehicle to correct the sudden acceleration problems;

      e. Failure to adequately identify and mitigate the hazards associated with sudden unintended acceleration in accordance with good engineering practices; and,

      f. Were otherwise careless or negligent.

27) The aforementioned negligent acts and omissions of Defendants were the direct and proximate cause of Plaintiffs' damages, as described in the preceding paragraphs.

28) Plaintiffs are entitled to damages in an amount to be proven at trial, including both actual and exemplary damages, together with interest thereon and costs.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, in whatever amount that they are found to be entitled, together with interest, costs, and reasonable attorney fees.

## COUNT II – STRICT PRODUCT LIABILITY
## DESIGN DEFECT

29) Plaintiffs hereby incorporate by reference the preceding paragraphs.

30) Defendants, and each of them, designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired,

retrofit or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the subject vehicle and its component parts and constituents, which was intended by the Defendants, and each of them, to be used as a passenger vehicle and for other related activities.

31) Defendants, and each of them, knew that said vehicle was to be purchased and used without inspection for defects by its owners, Plaintiffs, and the general public.

32) The subject vehicle was unsafe for its intended use by reason of defects in its manufacture, design, testing, components and constituents, so that it would not safely serve its purpose, but would instead expose the users of said product to serious injuries.

33) Defendants designed the subject vehicle defectively, causing it to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

34) The risks inherent in the design of the subject vehicle outweigh significantly any benefits of such design.

35) Plaintiffs were not aware of the aforementioned defects at any time prior to recent revelations regarding problems with Toyota vehicles.

36) As a legal and proximate result of the aforementioned defects of the subject vehicle, Plaintiffs sustained the injuries and damages set forth herein while the Plaintiffs were using the subject vehicle in a reasonably foreseeable manner.

37) Plaintiffs are, therefore, entitled to damages in an amount to be proven at the time of trial, including both actual and exemplary damages.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, in whatever amount that they are found to be entitled, together with interest, costs, and reasonable attorney fees.

## COUNT III – STRICT PRODUCT LIABILITY
## FAILURE TO WARN

38) Plaintiffs hereby incorporate by reference the preceding paragraphs.

39) Defendants, and each of them, knew that the subject vehicle, and its component parts, would be purchased and used without inspection for defects in the design of the vehicle.

40) The subject vehicle was defective when it left the control of each of these Defendants.

41) At the time of the subject vehicle's design, manufacture, and sale, and continuing up to the time of Plaintiffs' injury, Defendants knew or should have known of the substantial dangers involved in the reasonably foreseeable use of these vehicles, whose defective design, manufacturing, and lack of sufficient warnings caused them to have an unreasonably dangerous propensity to suffer from sudden unintended acceleration and thereby cause injuries.

42) Defendants knew that these substantial dangers are not readily recognizable to an ordinary consumer and that consumers would purchase and use these products without inspection.

43) At all relevant times, Defendants failed to provide adequate warnings, instructions, guidelines or admonitions to members of the consuming public, including Plaintiffs, of the defects, which Defendants knew, or in the exercise of reasonable care should have known, to have existed in the subject vehicle, and its component parts.

44) At the time of Plaintiffs' injuries, the subject vehicle was being used in the manner intended by Defendants, and in a manner that was reasonably foreseeable by Defendants as involving substantial danger that was not readily apparent to its users.

45) Plaintiffs' damages were the legal and proximate result of Defendants' failure to provide adequate warnings. Defendants owed Plaintiffs a duty in designing, manufacturing, warning about, and distributing the subject vehicle.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, in whatever amount that they are found to be entitled, together with interest, costs, and reasonable attorney fees.

### COUNT IV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

46) Plaintiffs hereby incorporate by reference the preceding paragraphs.

47) Prior to the time of the subject incident, the Defendants impliedly warranted to members of the general public, including Plaintiffs, that the subject vehicle was of merchantable quality.

48) Members of the consuming public, including consumers such as Plaintiffs, were intended third-party beneficiaries of the implied warranty of merchantability.

49) Plaintiffs relied on the skill and judgment of Defendants in the selection and use of the subject vehicle as a safe and reliable means for transportation.

50) The subject vehicle was not of merchantable quality as warranted by Defendants, in that it was defectively designed, thereby dangerously exposing the users of said vehicle and those around it to serious injury.

51) After Plaintiffs received the injuries complained of herein, notice was given by Plaintiffs to Defendants of the breach of said implied warranty.

52) As a legal and proximate result of the breach of said implied warranty, Plaintiffs sustained the damages herein set forth.

53) Plaintiffs are, therefore, entitled to damages in an amount to be proven at the time of trial, including both actual and exemplary damages.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, in whatever amount that they are found to be entitled, together with interest, costs, and reasonable attorney fees.

## COUNT V – FRAUDULENT CONCEALMENT

54) Plaintiffs hereby incorporate by reference the preceding paragraphs.

55) Throughout the relevant time period, Defendants knew that the subject vehicle was defective in that these vehicles have an unreasonably dangerous propensity to suddenly accelerate and thereby injure the users of these vehicles and others.

56) Defendants fraudulently concealed from and/or failed to disclose to Plaintiffs the true defective nature of the subject vehicle.

57) Defendants were under a duty to Plaintiffs to disclose and warn of the defective nature of the subject vehicles because:

    a. Defendants were in a superior position to know the true state of the facts about the hidden defects in the subject vehicles, and those defects were latent;

    b. Defendants made partial disclosures about the safety and quality of the subject vehicles while not revealing their true defective nature; and

    c. Defendants fraudulently and affirmatively concealed the defective nature of the subject vehicles from Plaintiffs.

58) The facts concealed and/or not disclosed by Defendants to Plaintiffs were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or operate the subject vehicles.

59) Defendants intentionally concealed and/or failed to disclose the true nature of the problems with the subject vehicles for the purpose of inducing Plaintiffs to act thereon, and Plaintiffs justifiably acted or relied upon, to their detriment, the concealed and/or non-disclosed facts, as evidenced by their purchase and operation of the subject vehicle.

60) Defendants have not adequately notified past purchasers or warned future purchasers of the defects, and have not taken appropriate action to recall, buy back, or retrofit their defective products, including the subject vehicle.

61) As a direct and proximate cause of Defendants' misconduct, Plaintiffs have suffered actual damages, and are further entitled to exemplary damages.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, in whatever amount that they are found to be entitled, together with interest, costs, and reasonable attorney fees.

> Respectfully submitted,
> MERIDIAN LAW GROUP
>
> /s/ Richard G. Finch_____
> Richard G. Finch (P48592)
> Tarek M. Baydoun (P74551)
> Attorneys for Plaintiffs
> 19855 W. Outer Dr., Suite 104-W
> Dearborn, MI 48124
> (313) 288-8529

DATED: March 8, 2019

UNITED STATES OF AMERICA
IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD JACKSON and TERRY TOLBERT-JACKSON;
    Plaintiffs;

Case No.
Hon.

-vs-

TOYOTA MOTOR NORTH AMERICA, INC; TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.; and TOYOTA MOTOR SALES, U.S.A., INC.
    Defendants.
_____/
Richard G. Finch (P48592)
Tarek M. Baydoun (P74551)
MERIDIAN LAW GROUP
Attorneys for Plaintiffs
19855 W. Outer Dr., Suite 104-W
Dearborn MI 48124
(313) 288-8529
rfinch@meridianlawcounselors.com
_____/

## DEMAND FOR TRIAL BY JURY

NOW COME PLAINTIFFS, by and through their attorneys Meridian Law Group, and hereby demand a trial by jury on all issues so triable.

    Respectfully submitted,
    MERIDIAN LAW GROUP

    /s/ Richard G. Finch_____
    Richard G. Finch (P48592)
    Tarek M. Baydoun (P74551)
    Attorneys for Plaintiffs
    19855 W. Outer Dr., Suite 104-W
    Dearborn, MI 48124
    (313) 288-8529

DATED: March 8, 2019